IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL HANSCOM, on behalf of himself and others similarly situated,**    Plaintiff | : :  Civil Action No. 1:06-CV-2483 : : (Chief Judge Kane) |
| **v.** | : : |
| **CARTERET MORTGAGE CORP. and DOES 1 through 10, Inclusive,**    Defendants | : : : : |

**MEMORANDUM**

Plaintiff Michael Hanscom filed this suit against Defendant Carteret Mortgage Corp. ("Carteret") alleging that Carteret failed to pay him overtime and minimum wage in violation of the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.* Before the Court is Carteret's motion for partial summary judgment under Federal Rules of Civil Procedure 56. (Doc. No. 42.) In support of its motion, Carteret argues alternatively that Hanscom was exempt from the relevant provisions of the Act because he was an "outside salesperson," that he was a commissioned salesperson of a retail or service establishment, and that the statute of limitations on his claims had expired. The motion has been fully briefed. (Doc. Nos. 44, 47, 50.) For the reasons that follow, the Court will grant Defendant's motion.

**I.    BACKGROUND**

   **A.    Factual Background[1]**

Carteret is a Virginia corporation with its headquarters in Centreville, Virginia. Carteret employs loan originators, also known as loan officers, who originate loans with borrowers and

---

[1] Unless otherwise noted, the following facts are not in dispute for the purposes of summary judgment and are taken from Defendant's Amended Statement of Material Facts (Doc. No. 51).

then submit the loans to lenders for closing. (Doc. No. 49-4; Weinstein Dep. 23-24, Feb. 14, 2008.) Carteret's loan originators do not work out of its Centreville office; rather, they are attached to various branches across the country. Loan originators work primarily from their homes, and have no set schedule. They are required by company policy to originate at least one loan every six months, and are compensated solely by commission. (Weinstein Dep. 70.)

Plaintiff Michael Hanscom was employed by Carteret as a loan originator from April 26, 2004, to October 5, 2004, at Carteret's office in Owings Mills, Maryland, but worked primarily out of his home. (Doc. No. 48; Pl's Answer to Statement of Facts 29.) The weekly hours that Hanscom worked while at Carteret are highly disputed. Hanscom avers that he regularly worked more than forty hours per week but admits he was not required to keep track of his hours. (Id. 29-30.) For its part, Carteret argues that Hanscom failed to perform as expected. It is, nonetheless undisputed that during his approximately five-month tenure, Hanscom originated only one loan. During those months, he earned $3,288.11 in total pay. (Id. 31.) At no time was Hanscom paid overtime, a salary, or minimum wage.

Hanscom filed this collective action alleging that Carteret willfully violated the FLSA by classifying its loan officers—including him—as exempt from the Act's overtime and minimum wage requirements. Compl. ¶¶ 14-15; see 29 U.S.C. §§ 206-7. Carteret claims that he and other loan originators are exempt from the relevant provisions of the FLSA.

Though Carteret has a compliance officer who determines the applicability of federal and state financial laws, the compliance officer does not determine Carteret's FLSA status. (Pl's Answer to Statement of Facts, 29.) Instead, Carteret's founder and Chief Executive Officer, Eric Weinstein, is in charge of assuring that its practices conform to the FLSA. Weinstein is not a

lawyer, and when questioned, was unaware of some FLSA requirements such as where the FLSA's minimum wage poster needed to be posted in Carteret's branch offices. (Weinstein Dep. 141-42.) When he formed Carteret, Weinstein relied on what he understood was the industry practice, and classified loan originators as exempt from the FLSA. (Pl's Answer to Statement of Facts 31.) Carteret reinforces its position with a U.S. Department of Labor, Wage and Hour Division Opinion Letter dated March 31, 2006.[2]

The record reveals no prior FLSA violations by Carteret. Apparently at one point, the West Virginia Department of Labor inquired into the company's labor practices regarding loan originators, though nothing ever came of that inquiry, and Weinstein does not recall the circumstances or have any documentation regarding that event. (Pl's Answer to Statement of Facts 31.)

**B.     Procedural History**

Hanscom filed his complaint on December 29, 2006, (Doc. No.1) and Carteret answered on February 21, 2007 (Doc. No. 12). The Parties submitted their Joint Case Management Plan (Doc. No. 21) on August 8, 2007. On February 13, 2008, Hanscom moved to amend his complaint pursuant to Federal Rules of Civil Procedure 15(a) (Doc. No. 30), and on April 3, 2008, the Court denied his motion (Doc. No. 39). Carteret's present motion for partial summary judgment came before the Court on April 23, 2008.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted on all or part of a claim when "the pleadings, the discovery and disclosure materials on file, and

---

[2] The Opinion Letter (Doc. No. 42-7) is available at 2006 WL 1094597.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). The Court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91 (3d Cir. 2008) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001)).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.

**III. DISCUSSION**

Carteret moves for partial summary judgment on three grounds: first, that it properly classified Hanscom as exempt from the FLSA because he was an "outside salesperson" under 29 U.S.C. § 213(a)(1); second, that the statute of limitations has run on Hanscom's claims; and third, that Hanscom is exempt because he was a commissioned employee of a "retail or service establishment" under § 207(i). Because the Court ultimately concludes Hanscom's claims are

time-barred, it will not address the parties' arguments pertaining to the "outside salesperson" and commissioned salesperson of a "retail or service establishment" exemptions.

The statute of limitations for the FLSA is two years, except for "willful" violations, in which case it is three years. 29 U.S.C. § 255(a).[3] Carteret terminated Hanscom on October 5, 2004 and he filed suit on December 29, 2006. Both parties agree that the action was commenced more than two but fewer than three years after the statute of limitations on his claims began to run. (Def's Am. Statement of Material Facts ¶¶ 18-19.) Hanscom's claims are therefore untimely unless Carteret's FSLA violations were "willful."

An employer willfully violates the FLSA if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Because Carteret has moved for partial summary judgment, Hanscom must show that there is a genuine issue of material fact—that a reasonable juror could find Carteret acted willfully. See Brown v. Norton, No. 02-5556, 2008 WL 2228704 (D.N.J. May 28, 2008).

The FLSA's two-tiered statute of limitation reflects Congress's intent to distinguish between wilful and nonwillful violations of the Act. Richland Shoe, 486 U.S. at 132. In Richland Shoe, the United States Supreme Court noted that, although in the law "willful" is not defined consistently, "[i]n common usage, [it] is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional,'" and it generally refers to conduct that is not merely

---

[3] Originally, the FLSA had no statute of limitations. The Portal-to-Portal Pay Act of 1947 amendments to the FLSA created a two-year statute of limitations. In 1965, the Secretary of Labor proposed increasing the limitations period to three years, but Congress took no action. Instead, Congress passed an amendment creating the current two-tiered statute of limitations. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 131-32 (1988).

negligent. Id. at 133 (citing Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977)). The Court adopted a strict interpretation of "willful" because to do otherwise would "virtually obliterate[] any distinction between willful and nonwillful violations." Id. at 132-33. The Court thought that construing "willful" to mean an intentional violation of or reckless disregard for the FLSA was a fair reading of the statutory language. Id. at 133; cf. Rigel v. Wilks, No. 1:03-CV-971, 2006 WL 3831384 at *13 (M.D. Pa. Dec.8, 2006) (interpreting a similar statute of limitations, 29 U.S.C. § 261(c), of the Family Medical Leave Act). The Court rejected an intermediate interpretation that would have permitted a finding of willfulness based on a negligent or good-faith (but incorrect) assumption that a pay plan complied with the FLSA. Richland Shoe, 486 U.S. at 134-35.

For example, courts will find FLSA violations to be willful if an employer knows a payment plan to be questionably legal or undeniably illegal and fails to take any action. In Martin v. Selker Brothers, Inc., 949 F.2d 1286 (3d Cir. 1991), the defendant-employer adopted a commission payment system over an hourly wage-rate payment system to reduce costs. Though he told his employee there was a "fine line" between the commission payment system's validity and FLSA violations, he continued to use the system despite the doubts about its legality. Id. at 1296. The court found that the employer's evident indifference towards FLSA requirements was a willful violation. Id.

Similarly, when a municipal employer was cognizant that its employees were working overtime, and was aware that failing to pay overtime wages might be illegal, but nonetheless

categorically dismissed a Supreme Court decision[4] holding that the plaintiffs were covered by the FLSA, the municipality's violation was found to be willful. Albanese v. Bergen County, 991 F. Supp. 410 (D.N.J. 1997). Finally, when an employer is put on notice by prior violations and fails to contest testimony indicating it was purposefully evading FLSA provisions, the violation is willful. Chao v. A-One Medical Servs., Inc., 342 F.3d 908, 918-19 (9th Cir. 2003); see also Dole v. Elliott Travels & Tours, Inc., 942 F.2d 962 (6th Cir. 1991) (violation willful when the employer had prior notice that compensation terms violated the FLSA).

Another method to show willfulness is to show reckless disregard for the provisions of the FLSA. A good example is Herman v. RSR Security Services, Ltd., 172 F.3d 132 (2d Cir. 1999). In RSR Security Services, the company chairman was directly unaware of FLSA violations but he relied on subordinates whom he knew had backgrounds blemished with illegal business practices and conducted no independent investigation into whether the company's employees were being paid according to the FLSA. Id. at 141-42. The court found that the chairman's actions constituted reckless disregard, and thus a willful violation, of the FLSA. Id.

When an employer is simply mistaken about the terms of the FLSA, however, courts generally find that such a violation, albeit negligent, is not willful. For example, the Third Circuit has held that a FLSA violation was not willful when an employer instructed employees to not fill out more than forty hours on their weekly time cards, reprimanded employees who did, and erroneously interpreted applicable FLSA law. Reich v. Gateway Press, Inc., 13 F.3d 685, 702-03 (3d Cir. 1995). When the defendant shows that he reasonably believed he was

---

[4] Garcia v. San Antonio Metro. Trans. Author., 469 U.S. 528 (1985) (applying the FLSA to state and local governments).

complying with existing FLSA law, summary judgment for the employer is appropriate on the issue of willfulness.  See Oakes v. Pennsylvania, 871 F. Supp. 797 (M.D. Pa 1995); see also McIntyre v. Div. of Youth Rehab. Servs., 795 F. Supp. 668 (D. Del. 1992) (violation not willful when employer believed plaintiff was covered by administrative exemption); Hilbert v. District of Columbia, 784 F. Supp. 922 (D.D.C. 1992), aff'd in part, rev'd in part on other grounds, 23 F.3d 429 (D.C. Cir. 1994) (violation not willful when the employer did not thwart settled law or recklessly disregard pertinent legal questions).

      Turning to the facts of this case, Carteret contends that when its CEO, Eric Weinstein, determined the loan officers were exempt, he relied on existing law and industry practice, and his determination was reinforced by a U.S. Department of Labor, Wage and Hour Division Opinion Letter dated March 31, 2006.  (Doc. No. 50; Def's Reply Br. 9.)  In that letter , which pertained to a mortgage company's "sales force" mortgage officers, the Wage and Hour Division opined that sales force loan officers who were "customarily and regularly engaged in outside sales" were outside salespersons and thus exempt; although the letter excluded employees who mainly perform their work inside an office.  This letter, in part, formed Weinstein's basis for believing Carteret's loan officers were exempt because the sales force officers were similar to Carteret's loan originators.  (Weinstein Dep. 211-12.)  Thus, Weinstein's reliance—even if mistaken—does not amount to a willful violation of the FLSA.

      Hanscom advances several arguments in opposition.  First, he argues that Carteret was put on notice that wage and hour laws applied to Carteret's loan originators because of the West Virginia Department of Labor's inquiry.  (Pl's Br. in Opp'n 16.)  But awareness that the FLSA is "in the picture" is not enough to prove willfulness.  Oaks, 871 F. Supp. at 801 (quoting Richland

Shoe, 486 U.S. at 132). The record contains no evidence that the West Virginia Department of Labor found that Carteret violated the FLSA and Hanscom admits that West Virginia did not pursue an investigation of Carteret. (Pl's Answer to Statement of Facts 31.)

Second, anticipating Carteret's argument that reliance on industry practice negates a finding of willful intent to violate the FLSA, Hanscom argues "reliance on the industry standard does not amount to due diligence. At a minimum it is reckless." (Pl's Br. in Opp'n 15.) But the only case Hanscom cites in support of his argument, Oetinger v. First Residential Mortgage Network, Inc., No 3:06-CV-381-H, 2007 WL 734859 (W.D. Ky. Mar 6, 2007), does not concern the interpretation of willfulness under section 255(a), and the Court is not aware of any decisions in this Circuit holding that a FLSA violation was willful when a defendant-employer relied on a reasonable interpretation of existing law.

Finally, Hanscom argues that Carteret was reckless with regard to FLSA compliance. Weinstein determined wage and labor compliance by himself though Carteret's Compliance Officer determined compliance with mortgage-related requirements and laws. (Pl's Br. in Opp'n 13-14.) Hanscom suggests that this fact demonstrates recklessness, because Weinstein—who is not a lawyer—determined that the loan officers were exempt by relying on the Wage & Hours Opinion, and did not conduct a thorough review or petition the Department of Labor for an opinion regarding the outside sales exemption's applicability to Carteret's loan officers. (Id.) Though Hanscom may argue otherwise, willful violations are generally found in cases where an employer had information that its practices were *illegal.* The evidence in this case shows that Carteret reasonably believed its practices were actually *legal* and based its belief on industry practice and a Department of Labor document. To hold that individual consultation with the

Department of Labor is required to avoid a finding of willfulness would be "a great imposition upon both the Department of Labor and employers . . . in such cases." McIntyre, 795 F. Supp. at 675.

Hanscom has not proffered any evidence that Carteret intentionally violated the FLSA or that it recklessly disregarded the Act's provisions. The record reveals that Carteret reasonably believed, based on the reliance of counsel, industry practice, and existing law, that its loan officers were exempt from the FLSA's minimum wage and overtime requirements. Accordingly, the Court finds that its conduct, if violative of the FLSA, does not amount to a willful violation and therefore that Hanscom's claims are barred by the statute of limitations.

## IV.   CONCLUSION

Carteret's motion for partial summary judgment will be granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL HANSCOM, on behalf of himself and others similarly situated,** | : | |
| **Plaintiff** | : | Civil Action No. 1:06-CV-2483 |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **CARTERET MORTGAGE CORP. and DOES 1 through 10, Inclusive,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, on this 5th day of November, 2008, upon due consideration of the parties' arguments and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant Carteret's motion for partial summary judgment (Doc. No. 42) is **GRANTED**.

 _s/ Yvette Kane_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania